UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD L. TURNER, | No. C 05-2297 MHP |
| Plaintiff, | |
| v. | **MEMORANDUM & ORDER** |
| WARREN E. RUPF, et al., | Re: Defendants' Motion for Summary Judgment |
| Defendants. | |

Plaintiff Edward Turner commenced this action under 42 U.S.C. section 1983, alleging deliberate indifference to his serious medical needs during his incarceration at the Martinez Detention Facility ("MDF"). Defendants' first motion for summary judgment was denied in February 2008. Now before the court is defendants' second motion for summary judgment. Defendants assert they are entitled to summary judgment because (1) on the undisputed facts, no violation of plaintiff's constitutional rights has occurred, (2) there is no evidence of any actionable denial of medical care to plaintiff while incarcerated, and (3) qualified immunity shields the defendants from liability. Having considered the parties' arguments and submissions, the court enters the following memorandum and order.

BACKGROUND

Plaintiff has alleged the following cognizable claims: (1) Defendant Dyer[1] failed to inform custodial staff of Turner's medical condition (that Turner suffered from pain resulting from a car

accident), and defendant Hernandez subsequently placed Turner in an upper bunk despite being informed that Turner's condition made climbing into the bunk very painful; (2) defendant Poole refused to provide Turner with pain medications on July 16, 2001; (3) defendants Longstreth, Poole and Diente refused to schedule a doctor's appointment for Turner and/or denied him pain medications on December 1, 2001; (4) defendants Wilson and Guy refused to examine Turner when he complained of back and neck pain on October 30, 2001; (5) defendants Titus, Wilson, O'Mary, Guy, Seeberger, Longstreth, Huie, Pizzo and Rael failed to address Turner's ongoing pain in his injured hand; (6) defendants Titus, Guy, Rayrao, Poole, Wilson and Lumpkin failed to provide Turner with prescribed pain medications relating to recurrent nose bleeds and nose surgery between June 11, 2002, and December 13, 2002; (7) defendant Canady failed to inform Turner's doctor that the metal plates inside Turner's prescribed knee brace had to be removed; (8) medical staff failed to inform custodial staff that Turner's medical condition required that he be housed on the first floor, and defendants Oliver and Gray subsequently ordered Turner to move to the second floor despite knowledge of his medical brace and medical need to remain on the first floor; (9) defendant Gray and/or defendant Tanya failed to respond to Turner's complaint of pain on February 14, 2003; and (10) defendant Oliver tripped over Turner's outstretched leg, causing Turner significant pain. Docket No. 12 (Order of Service and Partial Dismissal) at 4-6.

Plaintiff filed a motion for partial summary judgment in February 2007, seeking judgment as a matter of law against Oliver. Docket No. 48. This court denied the motion, finding that a genuine issue of fact existed as to whether Oliver had acted with deliberate indifference. Docket No. 78 (Order Denying Pl.'s MSJ) at 3-4. Defendants then filed a motion for summary judgment on the grounds that (1) plaintiff's Eighth Amendment civil rights had not been violated, (2) defendants were entitled to qualified immunity, (3) any violation of plaintiff's Constitutional civil rights amounted to no more than negligence and (4) plaintiff had failed to exhaust administrative remedies. Docket No. 79. This motion was denied in February 2008 because defendants provided neither evidence proving non-exhaustion nor evidence contradicting plaintiff's verified complaint and opposition declaration. Docket No. 84 (Order Denying Def.'s MSJ). As to qualified immunity, the court found

that no reasonable officer would have failed to understand that the treatment alleged by plaintiff would amount to a violation of a clearly established right.

Defendants assert on their instant motion that the undisputed facts demonstrate no deliberate indifference on the part of defendants and thus no constitutional violation. Defendants also reassert the qualified immunity defense.

LEGAL STANDARD

Summary judgment may be granted only when, drawing all inferences and resolving all doubts in favor of the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see generally Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-255 (1986). A fact is "material" if it may affect the outcome of the proceedings, and an issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* at 248. The court may not make credibility determinations. *Id.* at 255. The moving party bears the burden of identifying those portions of the pleadings, discovery and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its initial burden, the non-moving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. Fed R. Civ. P. 56(e); *see Anderson*, 477 U.S. at 250.

DISCUSSION

I.  Successive Motions for Summary Judgment

Plaintiff asserts that law of the case doctrine precludes duplicative motions which seek reexamination of prior rulings in the same litigation. The Ninth Circuit has rejected the position that successive motions for summary judgment are categorically impermissible. *See Knox v. S.W. Airlines*, 124 F.3d 1103, 1105-06 (9th Cir. 1997). Indeed, the Ninth Circuit recently wrote: "[W]e now hold explicitly that district courts have discretion to entertain successive motions for summary

3

judgment, independent of whether the motions involve qualified immunity." *Hoffman v. Tonnemacher*, 593 F.3d 908, 911 (9th Cir. 2010). "[A] successive motion for summary judgment is particularly appropriate on an expanded factual record." *Id.* (citations omitted). Defendants' initial motion for summary judgment was exceptionally "slopp[y]" and presented with no supporting evidence. *See* Docket No. 79 (Mot.); Docket No. 84 (Order) at 1, 5. Defendants are now represented by the Contra Costa County Counsel's office, and the factual record has been expanded with filings by both plaintiff and defendants. Under the circumstances, the court finds it appropriate to consider a second motion for summary judgment.

II.     Deliberate Indifference to Serious Medical Needs

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A claim of deliberate indifference to serious medical needs by a pretrial detainee arises under the Fourteenth Amendment rather than the Eighth Amendment, although the Eighth Amendment serves as the benchmark for evaluating the claim. *Carnell v. Grimm*, 74 F.3d 977, 979 (9th Cir. 1996). A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *McGurkin v. Smith*, 974 F.2d 1050, 1059 (citing *Estelle*, 429 U.S. at 104), *overruled on other grounds by, WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997). The "existence of chronic and substantial pain" was one of the examples cited by *McGurkin* as an indication that a prisoner has a serious medical need. *Id.* at 1059-60 (citing *Wood v. Housewright*, 900 F.2d 1332, 1337-41 (9th Cir. 1990)). A prison official is deliberately indifferent if he "knows of and disregards an excessive risk to inmate health or safety." *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Defendants assert that the undisputed facts show no constitutional violation. Defendants rely upon records indicating significant medical treatment provided to Turner during his incarceration. That Turner did receive some medical treatment does not prove that some of his serious medical needs were not addressed. Indeed, "[a] prisoner need not prove that he was completely denied medical care. Rather, he can establish deliberate indifference by showing that officials intentionally

4

interfered with his medical treatment." *Lopez v. Smith*, 203 F.3d 1122, 1132 (9th Cir. 2000) (citations omitted). Defendants fail to point the court to medical records contradicting plaintiff's specific claims of deliberate indifference.

Regarding the removal of metal knee braces prescribed to plaintiff, defendants have adequately explained why a prison official would require removal of the metal components of the brace. *See* Docket No. 119 (Schuler Dec.) ¶ 6; Docket No. 127 (Pascoe Dec.) ¶ 8. Both declarations, however, acknowledge that metal-hinged braces may be permitted at the insistence of the treating physician. *Id.* Defendants have failed to justify defendant Canady's alleged failure to inform the prescribing doctor that the metal would be removed. A reasonable person would have provided the doctor with an opportunity to either insist upon the brace or determine an alternative course of treatment. Also, defendants suggest that the metal-hinged knee brace was not prescribed until after plaintiff fell on the stairs on February 13, 2003, but the cited medical records are unclear on this point. *See* Docket No. 117 (Holmes Dec.), Exh. A (Records from Contra Costa Regional Medical Center) at 115-26. Medical records dated January 30, 2003, mention a knee brace, *id.* at 115, and plaintiff has declared that the hinged knee brace was prescribed during that meeting. Docket No. 122 (Chung Dec.), Exh. F (Turner Dec.) ¶ 22. A genuine issue of fact thus exists as to whether defendants acted with deliberate indifference regarding the removal of the metal plates from plaintiff's knee brace and whether plaintiff had been prescribed the hinged brace by the time he fell on February 13, 2003.

Regarding plaintiff's assignment to an upper bunk, plaintiff's sworn testimony is that he was assigned to a top bunk. Turner Dec. ¶ 9. Defendants argue that bunk assignments within each cell are generally determined by the inmates themselves. Yet defendants' own declarations state that inmate decisions regarding bunk assignments will not control when "a need for a lower bunk has been identified by medical staff." Schuler Dec. ¶ 4, Pascoe Dec. ¶ 7. A genuine issue of fact exists as to whether plaintiff was assigned to an upper bunk and whether defendants acted with deliberate indifference regarding such assignment.

5

III. Qualified Immunity

Defendants contend that qualified immunity protects them from liability. Qualified immunity shields a public official from individual liability for civil damages under 42 U.S.C. section 1983 so long as his conduct does not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, ___ U.S. ___, ___, 129 S.Ct. 808, 815 (2009) (citation and internal quotation marks omitted). Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). As qualified immunity provides immunity from suit and is not merely a defense to liability, it is important to "resolv[e] immunity questions at the earliest possible stage in litigation." *See Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court articulated an inquiry for determining whether qualified immunity is appropriate. For an official to benefit from qualified immunity, two requirements must be met. First, the court must determine whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the officer's conduct violated a constitutional right. *Id.* at 201. Second, the court must consider whether any constitutional right that was violated was so clearly established that a reasonable officer would understand that what he is doing violates that right. *Id.* at 202. The second inquiry is particularized, as it occurs in the specific context of the situation confronted by the official. *Id.*; *see also Rudebusch v. Hughes*, 313 F.3d 506, 514 (9th Cir. 2002). The *Saucier* inquiry articulated the first question as a threshold question; however the Court recently held that lower courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 129 S.Ct. at 818.

6

As in the first motion for summary judgment, defendants fall short of carrying their burden to show their entitlement to judgment in their favor on this affirmative defense. As previously indicated in the order denying that motion, no reasonable correctional officer or prison official would have thought it lawful to (1) refuse to tell custodial staff of an inmate's medical condition that required him to be in a lower bunk, or, once informed, insist on that inmate's assignment to an upper bunk, (2) refuse to provide an inmate with prescribed pain medications, (3) refuse to make appointments for an inmate to see a doctor, (4) refuse to examine an inmate complaining of neck and back pain, (5) refuse to address an inmate's ongoing pain from an injury, (6) refuse to inform a prescribing physician that a metal-hinged knee brace will not be permitted, (7) require an inmate with an injured knee to be housed on the second floor or (8) deliberately trip over an inmate's injured leg.[2]

Defendants indicate that adequate policies and procedures were in place at MDF during Turner's incarceration. The mere existence of policies and procedures in no way proves that defendants complied with these policies and procedures. Defendants have also submitted a declaration suggesting that Turner received appropriate medical care at MDF. Docket No. 118 (O'Mary Dec.) ¶ 3. This declaration fails to address the specific incidents of deliberate indifference cited by Turner and thus misconstrues the provision of *some* appropriate care as the provision of *all* appropriate care.

Material disputes of fact exist as to whether defendants violated Turner's clearly established constitutional right, and no reasonable officer would have thought it lawful to ignore plaintiff's serious medical needs in the ways alleged in the complaint. Defendants are not entitled to summary judgment on their qualified immunity defense.

///
///
///
///
///

7

CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is DENIED. Such denial renders plaintiff's motion to strike the declaration of Matthew Schuler moot, and that motion is accordingly DENIED. Defendants' objections to the declaration of Edward L. Turner are OVERRULED as untimely.[3]

IT IS SO ORDERED.

Dated: March 5, 2010

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

# ENDNOTES

1. Defendant Dyer is sometimes referred to as "Dreyer" in the record. Similarly, defendant Pizzo is sometimes referred to as "Pizzon" in the record, and defendant Rael's name is occasionally misspelled as "Real."

2. A genuine issue of fact exists as to whether defendant Oliver deliberately tripped over plaintiff's outstretched leg.

3. *See* Civil Local Rule 7-3(d). The objections were not filed until the hearing date, weeks after the reply was filed.